JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Lavett Johnson, appeals his conviction and sentence for one count of breaking and entering, a felony of the fifth degree in violation of R.C. 2911.13 and theft, a felony of the fifth degree in violation of R.C. 2913.02.
 {¶ 2} Appellant waived his right to a jury trial and was found guilty by the court of the two-count indictment. The court sentenced appellant to one year on the breaking and entering charge and six months on the theft charge. The sentences were ordered to be served consecutively.
 {¶ 3} At the time of the offense, appellant resided with his mother, Louise Johnson, at 1210 East 86th Street in Cleveland. An apartment complex located across the street from appellant's residence (1215 East 86th Street) was owned by Carl Cocita. Cocita was in the process of rehabilitating the unoccupied property and had brought various supplies to the property in the morning and afternoon on the day of the offense. The supplies included plumbing equipment, kitchen sinks, faucets, bathroom vanities, a drill, a paint sprayer and other tools. The approximate value of the supplies and tools was $4,000.
 {¶ 4} A neighbor, Kelly Ezell, who resided at 1218 East 86th Street, heard noises sometime between 10:30 p.m. and 11:00 p.m. on the date of the offense. The noises sounded like cars doors slamming and persisted for approximately ten minutes. Upon looking out of her bedroom window, Ezell observed three males coming from the apartment building. The men were carrying boxes and loading them onto a gray truck. One of the three men she observed was appellant, who was carrying a box with a picture of a cabinet on it; appellant loaded the box onto the gray truck. Ezell then observed appellant reenter and exit the apartment building three times. Ezell testified that she had "perfect" vision, that the area was well-lit, and that she was familiar with appellant.
 {¶ 5} Ezell further testified that as she was observing appellant's actions, she called Louise Johnson, appellant's mother and her landlord, and informed her of what she was observing. Johnson asked Ezell if the truck was gray, to which Ezell responded that it was. Johnson said "all right" and their conversation ended. Ezell testified that after her conversation with Johnson, she observed the same activity on the part of appellant for approximately five minutes and then observed appellant in the truck as it was being driven away.
 {¶ 6} The following day, Cocita received a phone call from his plumber, Fred, who indicated that "everything was gone." Upon arriving at the apartments, Cocita observed that the back door had kick marks on it as if somebody had tried to kick it in. Cocita also observed that the glass behind the basement window was broken out. Cocita immediately reported the incident to the police.
 {¶ 7} Cocita testified that he was familiar with appellant because appellant would come to the apartment building while he was there and attempt to sell various items to him. Appellant had been in the inside of the building. Cocita testified, however, that he did not give appellant permission to be on the property and, in fact, constantly told him, that for insurance purposes, he was not to go inside the units.
 {¶ 8} Cocita's property manager, Terry Dembkowski, also testified at trial. Dembkowski had been involved in bringing the various supplies and tools to the building earlier in the day on the date of the offense. That evening, sometime between 6:00 p.m. and 8:00 p.m., while Dembkowski was still at the apartment building, appellant came and stuck his head in the door and told Dembkowski he was looking for Fred (the plumber) and asked Dembkowski if he would like to come outside and look at some items he had for sale. Dembkowski testified that appellant was looking around the inside of the building. Dembkowski told appellant that he was busy and Fred was not around. Appellant left.
 {¶ 9} Before leaving that evening, which was sometime between 8:30 p.m. and 9:30 p.m., Dembkowski secured the building by locking the dead bolt, locking the door knob and setting the alarm.
 {¶ 10} The windows of the building were covered with newspaper so that it was impossible to see inside the building from them.
 {¶ 11} The following morning, Fred called Dembkowski and told him that the supplies and tools were gone. Upon arriving at the building, Dembkowski observed that the basement window was broken out and a wire from the alarm system was cut. Dembkowski also estimated that the supplies and tools totaled approximately $4,000.
 {¶ 12} Appellant called his mother to testify on his behalf. Johnson testified that in the midnight hour of the evening in question, she was jarred from her sleep by noises she heard. Johnson went outside to the tree lawn and observed at least three people bringing boxes out of the apartment building and putting them on the back of a light cream pickup truck. She testified that she was sure she did not see her son, appellant, involved in the moving and loading of the boxes. Johnson, however, further testified that she "could see them moving, who it was, I couldn't tell * * * it was too late at night and it was kind of dark." In fact, Johnson testified that she could not see their faces or even tell what race they were. Johnson testified that she did not call the police "because [she] was shocked to see this happening." Finally, Johnson testified that she had no idea whether Ezell had called her that night.
 {¶ 13} In his first assignment of error, appellant contends that the conviction was against the manifest weight of the evidence. We disagree.
 {¶ 14} A challenge to the weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. When evaluating a claim that a conviction was contrary to the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.; Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction." Martin, supra.
 {¶ 15} R.C. 2911.13 governs breaking and entering and provides in relevant part that:
 {¶ 16} "No person by force, stealth or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."
 {¶ 17} R.C. 2913.02 governs theft and provides in relevant part as follows:
 {¶ 18} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent[.]"
 {¶ 19} The State presented overwhelming evidence establishing that appellant was guilty of breaking and entering and theft. Ezell, a neighbor who was familiar with appellant, saw him carrying boxes out of the apartment building and loading them onto a gray truck. Ezell's view was not obstructed; she had "perfect" vision and the area was well-lit.
 {¶ 20} Upon speaking with Johnson, appellant's mother, about what she was observing, Johnson asked Ezell if the truck was gray. When Ezell responded that it was, Johnson said "all right" and their conversation ended.
 {¶ 21} Further, appellant was familiar with the apartment building, as he had often been milling around the building while work was being performed, offering various items for sale to Cocita and Dembkowski. In fact, earlier in the evening on the day of the incident, after the supplies and tools had been loaded into the building and while Dembkowski was still in the building, appellant came and stuck his head in the door and told Dembkowski he was looking for Fred and offered items for sale to Dembkowski. While there, appellant was looking around the inside of the building. The inside of the building was not viewable from the windows, as they were covered with newspaper.
 {¶ 22} Appellant did not have permission to be on the property; Cocita had specifically told him that for insurance purposes he was not to be on the property. Appellant did not have permission to exercise control over the approximate $4,000 worth of supplies and tools.
 {¶ 23} Entry was gained into the building by force; the back door had kick marks on it and a basement window was broken out. The alarm wire had been cut.
 {¶ 24} Appellant's argument that there was "substantial conflict" in the only two witnesses, Ezell and Johnson, who observed the incident is unpersuasive. Ezell and Johnson's testimony was similar, with the exception of one critical point: the identification of appellant. To that end, Johnson testified that she could not tell who the individuals were because it was late at night and too dark. Indeed, she could not even ascertain their race. Thus, her testimony that she is sure she did not see her son is weakened.
 {¶ 25} The trial court addressed the difference in Ezell and Johnson's testimony on this point:
 {¶ 26} "The Court finds in particular that the testimony provided by Ms. Kelly Ezell was compelling in its clarity and trustworthiness; that this version of the events was corroborated by the various State's witnesses and not significantly rebutted in the defense case."
 {¶ 27} We agree with the trial court and, thus, find that appellant's first assignment of error is without merit.
 {¶ 28} In his second assignment of error, appellant contends that the trial court erred in sentencing him to consecutive prison terms. In particular, appellant argues that the trial court did not make the statutorily mandated findings pursuant to R.C. 2929.14(E)(4).
 {¶ 29} R.C. 2929.14(E)(4), relative to consecutive sentences, provides in relevant part as follows:
 {¶ 30} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 31} "* * *
 {¶ 32} "* * *
 {¶ 33} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 34} Here, in sentencing appellant to consecutive terms, the trial judge stated the following:
 {¶ 35} "* * * [T]he Court finds that Mr. Johnson's criminal history requires consecutive sentencing. Consecutive sentences are necessary to fulfill the statutory purpose, and are not disproportionate to the seriousness of the defendant's conduct, and are necessary again to fulfill the legislature's purpose."
 {¶ 36} While this case was pending on appeal, however, the Supreme Court of Ohio, in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, relying on Apprendi v. NewJersey (2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, held that R.C.2929.14(E)(4), as well as other provisions in the Revised Code, is unconstitutional because it violates a defendant's Sixth Amendment right to a jury trial. Because appellant waived his right to a jury trial, Blakely is not implicated, however.
 {¶ 37} As such, appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., CONCURS.
 ANN DYKE, A.J., CONCURS IN JUDGMENT ONLY WITH SEPARATECONCURRING OPINION.
 CONCURRING OPINION